In McIlvaine v. Steinson, 90 App. Div. 77, 85 N. Y. Supp. 889, the court refused to review an order denying a motion for a jury trial, as it was not specified in the notice of appeal from the judgment. The plaintiff should not claim the Appellate Term decided *the questions upon their merits,* raised by the motion at the second trial. If the court erroneously granted the motion upon insufficient evidence or otherwise, it was the duty of the aggrieved party to have entered an order and properly appealed therefrom. In the case at bar, after a lengthy second trial and almost at the close, the question presented itself. The court decided the concessions to have been qualified, and relieved the defendant therefrom. Had plaintiff believed he was seriously hampered and his proof limited by the decision, he should have addressed himself to the discretion of the court, and have asked to have a juror withdrawn, or otherwise made some proper motion to protect his client's interests. Whether the original concession were qualified or unqualified, the justice had jurisdiction to pass upon and to decide the question. Justice Bijur, in Goodman v. New York Railways Co., 88 Misc. Rep. 95, 100, 150 N. Y. Supp. 702, 705, writing for the Appellate Term, says:

"Respondent's counsel, on the previous trial, had conceded, upon certain terms, that if judgment were rendered in favor of plaintiff the award of damages might be $500, and plaintiff appellant insists that such concession was binding upon the trial now reviewed. I think the stipulation, by its very terms, shows plainly that it was limited to the trial at which it was given, and is therefore no longer binding; *but, even if that were not so, the court below at the present trial quite properly relieved the respondent from it.*"

Motion is accordingly denied, with costs to the defendant.
Motion denied, with costs to defendant.

---

(89 Misc. Rep. 333)

In re LANGDON.

(Surrogate's Court, New York County. February, 1915.)

1. WILLS ☞766—CONSTRUCTION—PURCHASE OF ANNUITY—ADEMPTION.
    Where a will, designed to secure for testator's only daughter, an incompetent, every possible care and comfort for life, directed that the executor purchase for her an annuity of $425, the same to be "in addition to the annuities I now hold for her lifetime or hers and my own of $800 a year," the purchase by testator of an additional $500 annuity was not an ademption of the one of $425.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1981–1985; Dec. Dig. ☞766.]

2. WILLS ☞680—CONSTRUCTION—BEQUEST—INCOME.
    Under such will, the principal of the estate must be held by the executor in trust for the daughter for life, and from the income thereof the executor must pay the annuity and satisfy all expenses of the daughter's maintenance, and hold any surplus income thereof to defray any unforeseen additional expense for future maintenance and support.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1594–1598; Dec. Dig. ☞680.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. PERPETUITIES &#128;9—CONSTRUCTION OF WILL—ACCUMULATION OF INCOME—
VALIDITY.

Where a will contains no direction for the accumulation of income, the necessary accumulation yearly resulting from the use of but a portion of the income is not a void accumulation.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 67–73; Dec. Dig. &#128;9.]

Proceedings on the judicial settlement of the account of Woodbury G. Langdon, as executor of the last will and testament of Ranieri R. Vilanova, deceased. Decreed according to opinion.

Lord, Day & Lord, of New York City, for executor.

Francis J. Hogan, of New York City, for Julia Shandley.

Peter B. Olney, of New York City, special guardian.

COHALAN, S. Upon this executor's accounting a construction of the will of the testator is necessary. The testator was a widower, and had but one child, a daughter, Therese T. Vilanova, who is an invalid and incompetent, and is at present cared for at St. Vincent's Retreat at Harrison, N. Y.

[1] By the third paragraph of his will the testator directed his executor, out of any funds on deposit in banks or trust companies, to purchase an annuity of $425 for the lifetime of said daughter and payable half-yearly to himself as executor, "which shall be in addition to the annuities I now hold for her lifetime or hers and my own of $800 a year." After the execution of the will the testator during his lifetime purchased an annuity of $500, and the question is asked: Should the executor now purchase an annuity of $425, as directed by the third paragraph of the will, or is the purchase by the testator during his lifetime of the additional $500 annuity an ademption of this legacy? I am of the opinion that it is not. The executor, by the fourth paragraph of the will, was directed from the aggregate annuities to provide for the care and maintenance of his daughter by paying her board and expenses of $40 a month while she remained at St. Vincent's Retreat and $10 a month more for carriage drives, clothing, and other incidentals, or, "if she shall cease to be a patient at said asylum, by otherwise supplying her needs and giving her suitable care." He was also directed from said annuities to pay one Julia Shandley $20 a month for her services to the daughter of the testator in writing to her at least once a month and in procuring her necessary wearing apparel, carriage drives, and generally looking after his daughter and seeing that her wants were supplied; such payments to be made only so long as Julia Shandley should render such services. Provision is also made by the fifth paragraph that, in case his daughter shall so far recover from her ailment that she shall be able to leave the asylum and it shall be no longer necessary that she shall be under similar restraint, the executor shall be authorized to consent to have her well taken care of by Julia Shandley if she be willing, or by some other proper person, and that "the cost of their living together be paid out of said annuities to such an amount as shall be necessary, with a suitable contribution

by Julia Shandley to such expenses," and the executor "may also pay from said annuities or from *any of my estate available* such additional cost of maintenance of my daughter out of the asylum as they shall deem enough." The remainder of the estate is given, one half to St. Vincent's Retreat, and the other half to Julia Shandley, if she shall be living at the death of the testator's daughter and shall have complied with his wishes concerning his daughter, and, if not, then all to St. Vincent's Retreat.

From a reading of the will it can readily be seen that the primary object which the testator had in view was to secure for his only and incompetent daughter for the rest of her life every possible care and comfort suited to her unfortunate circumstances and condition. The whole will is designed to accomplish this end. Her welfare was the all-important wish of the testator. He did not mean by the fourth paragraph of the will to limit his executor to the expenditure of $840 a year, but intended also to provide for emergencies and changes of circumstances, so that his daughter should not be deprived of the necessities of life or become an object of charity because there was but $840 a year available, which, by reason of changes of condition, might at some time be inadequate for her maintenance and support. Apparently, while she remains at St. Vincent's Retreat, $50 a month will pay for her care and keeping; but it is possible that she may not remain there always, or that St. Vincent's Retreat may not always be in existence, and she would have to be cared for elsewhere at perhaps a much higher price. The evident intent of the testator is that his estate, to whatever extent necessary, may be used for the proper maintenance and care of his daughter, and this is strongly emphasized by the fifth paragraph of the will, which provides for the care of the daughter in the event of her becoming cured and being able to leave the asylum where she is now confined. In that event the executor is to pay "from *any of my estate available*" the additional cost of maintenance of his daughter out of the asylum. The testator knew that, if his daughter was cured and left the asylum, a much greater amount of money might be necessary to defray her living expenses. I therefore hold that the terms of the third paragraph of the will should be complied with, and that the executor purchase an additional annuity of $425.

[2, 3] The balance of the principal of the estate the executor should hold in trust for the daughter during her life, and from the income thereof make the annuity payment and satisfy all expenses of the daughter's maintenance, and should hold any surplus income thereof to meet and defray any unforeseen additional or extraordinary expense for the maintenance and support of the testator's daughter which does not now exist. No express direction for an accumulation is contained in the will, and the necessary accumulation yearly resulting from the use of but a portion of the income is not a void accumulation under the statutes. Hill v. Guaranty Trust Co., 163 App. Div. 374, 148 N. Y. Supp. 601; Estate of Burns, 164 App. Div. 363, 149 N. Y. Supp. 731.

Decreed accordingly.